# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF RHODE ISLAND

ROBERT W. CLARK, JR.

    Plaintiff,

v.

MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC. et al.

    Defendants.

C. A. No. 12-802-M

## MEMORANDUM AND ORDER

JOHN J. MCCONNELL, JR., United States District Judge.

Plaintiff Robert W. Clark, Jr. filed a lawsuit against Defendants Mortgage Electronic Registration Systems, Inc. ("MERS") and Bayview Loan Servicing, LLC ("Bayview"), alleging that Bayview had no standing to foreclose on his mortgage because the assignment of his mortgage from MERS to Bayview was void. Both Defendants move to dismiss pursuant to Fed. R. Civ. P. Rule 12(b)(6), arguing that Mr. Clark lacks standing to bring his suit in light of the developing case law from the Rhode Island Supreme Court and the United States Court of Appeals for the First Circuit. In the alternative, MERS and Bayview argue that even if Mr. Clark has standing, his claims fail nonetheless.

The issues in this case raise matters that are potentially applicable to hundreds of similar mortgage foreclosure cases on this Court's Mortgage Docket including the validity of assignments and who has standing to raise these issues, the legality of the MERS system, and the

requirements of Rhode Island's statutory scheme for mortgages.[1] Along with these substantive matters, this case implicates the procedural issues of the proper standard of review to be applied at this stage of the litigation in light of a recent Rhode Island Supreme Court opinion.

I.  FACTS

Mr. Clark executed a mortgage for real estate located at 254-256 Old Forge Road in Warwick, Rhode Island. (ECF No. 1 at ¶¶ 1, 7.) The first floor is a restaurant and the second floor has a two-bedroom apartment. (ECF No. 28-5 at 3.) The mortgage listed the Lender as "Equity One, Inc. dba Equity One Mortgage Company" ("Equity One") and the mortgagee as MERS acting "solely as the nominee for Lender and Lender's successors and assigns." (ECF No. 1 at ¶¶ 7, 8.) The mortgage was recorded on February 24, 2004. On April 19, 2012, MERS assigned the mortgage to Bayview who recorded the assignment. (ECF No. 1 at ¶ 9.) Mr. Clark alleges that this assignment is void because David Briggs, a Bayview employee, signed the assignment and did not have authority because he was not a Vice President or Assistant Secretary of MERS. (ECF No. 1 at ¶¶ 9-13.)

It is not clear from the Complaint, but at some point, Mr. Clark stopped paying his mortgage. Bayview has initiated a foreclosure proceeding for lack of payment, but no foreclosure has taken place to date. (ECF No. 28-1 at 2 n.2.)

In the face of the threatened foreclosure, Mr. Clark filed this Complaint setting forth three counts: declaratory injunction (Count I), quieting title (Count II), and punitive damages (Count III). (ECF No. 1.) The Complaint requests: a declaration as to title and ownership of the property; a declaration that Mr. Clark owns the property as a matter of law; a declaration that

---

[1] The Court recognized that a large number of cases on its mortgage docket raised similar claims and defenses. The Court instructed the parties to identify cases with common legal issues where the determination of those issues might apply to a number of cases on the docket. The parties identified Mr. Clark's case as one such case.

only Mr. Clark has marketable title; a declaration that the conveyance, the assignment, and the acknowledgment are void; an order quieting title to the property; unspecified damages and attorney's fees; and punitive damages. (*Id.*)

Mr. Clark bases his plea for relief on four arguments. First, he argues that the assignment from MERS to Bayview is not valid because a person duly authorized did not sign the assignment. Second, he asserts that the assignor did not hold both the mortgage and note as is required under Rhode Island state law. Third, he asserts that Defendants did not follow the statutory and contractual notice requirements. Fourth, Mr. Clark asserts that the mortgage is current or has been satisfied.

This case was originally assigned to the Special Master's docket. By text order issued on May 24, 2013, this Court accepted the Special Master's recommendation (ECF No. 16) that the case be removed from her docket because the property was considered commercial. Defendants then filed the instant motion to dismiss. (ECF No. 28.) Mr. Clark filed an objection (ECF No. 33) to which Defendants replied, attaching several documents. (ECF No. 38.) Mr. Clark filed a supplemental memorandum citing two recently issued Rhode Island Supreme Court opinions, *Mruk v. Mort. Elec. Registration Sys., Inc.*, 82 A.3d 527 (R.I. 2013) and *Chhun v. Mort. Elec. Registration Sys., Inc.*, 84 A.3d 419 (R.I. 2014). (ECF No. 39.) The Court held a hearing on the motion on February 4, 2014 and Defendants filed a post-hearing reply memorandum, addressing the new case law.[2] (ECF No. 40.)

On February 14, 2014, this Court issued a text order stating that because Defendants presented matters outside the pleading in support of its Motion to Dismiss (*see e.g.*, ECF No. 38-5), the Court intended to treat the motion as one for summary judgment pursuant to Fed. R. Civ.

---

[2] The Court has also received an amicus brief in support of Defendants' motion from BAC Home Loans Servicing, LP and Bank of America, N.A. (ECF No. 44.)

3

P. 12(d). All parties were given time to present any additional material that they deemed pertinent to the motion. Neither party submitted additional materials. Mr. Clark objected to the matter being converted to a summary judgment motion. (ECF No. 47.) Defendants then filed a motion asking the Court to reconsider and not to convert the motion to one for summary judgment, but to consider it as a motion to dismiss. (ECF No. 48.) In light of both parties' positions, the extensive briefing, argument, existing case law and supplements, the Court finds itself well equipped to decide the motion to dismiss without considering matters outside the Complaint. Moreover, because of the guidance set forth in the rapidly evolving case law, specifically the First Circuit Court of Appeal's decision in *Wilson v. HSBC Mortg. Servs., Inc.*, --- F.3d ---, No. 13-1298, 2014 WL 563457 (1st Cir. Feb. 14, 2014), the Court will decide Defendants' motion to dismiss under 12(b)(6) as originally filed.[3]

## II. STANDARD OF REVIEW

To survive a motion to dismiss for failure to state a claim, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). At the same time, the Court must accept Plaintiffs' allegations as true and construe them in the light most favorable to them. *Gargano v. Liberty Int'l Underwriters*, 572 F.3d 45, 48 (1st Cir. 2009).

"A Rule 12(b)(6) motion will be granted only if, when viewed in this manner, the pleading shows no set of facts which could entitle plaintiff to relief." *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 514 (1st Cir. 1988) (citing *Conley v. Gibson*, 355 U.S. 41, 45-48 (1957)). These "minimal requirements are not tantamount to nonexistent requirements. The threshold may be low, but it is real – and it is the plaintiff's burden to take the step which brings his case

---

[3] Therefore, Defendants' Motion for Reconsideration (ECF No. 48) is GRANTED.

4

safely into the next phase of the litigation." *Gooley*, 851 F.2d at 514. "[A] plaintiff ... is ... required to set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Id.* at 515.

In light of the Rhode Island Supreme Court's *Chhun* decision, an important distinction must be drawn in this case between the standard of review that Rhode Island state courts use in deciding motions to dismiss and our federal standard. State courts grant motions to dismiss "when it is clear beyond a reasonable doubt that the plaintiff would not be entitled to relief from the defendant under any set of facts that could be proven in support of the plaintiff's claim." *Palazzo v. Alves*, 944 A.2d 144, 149-50 (R.I. 2008). Conversely, in federal court, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombley*, 550 U.S. at 570). The Rhode Island Supreme Court recognized that the federal standard is more stringent and "cannot be blended with the traditional Rhode Island standard." *Chhun*, 84 A.3d at 422 n.5.

Though this Court sitting in diversity must apply Rhode Island substantive law, it is obliged to apply federal procedural law and is bound to apply the *Iqbal-Twombley* federal standard. *Allison v. Byard*, 163 F.3d 2, 4 (1st Cir. 1998). Therefore, in order to survive a motion to dismiss, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombley*, 550 U.S. at 555. The Court need not accept all allegations in the complaint as true – "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Plaintiff's complaint must state a plausible claim for relief in order to survive a motion to dismiss. *Id.*

5

## III. ANALYSIS

Mr. Clark levels three claims against Bayview and MERS – Declaratory Judgment (Count I), Quieting Title (Count II), and Punitive Damages (Count III). (ECF No. 1.) The Court will analyze each of these claims in light of Defendants' motion to dismiss and the applicable case law.

### A. Count I – Declaratory Judgment

In his claim for declaratory judgment, Mr. Clark alleges that he owns the property and any assignment of his mortgage to Bayview "failed to vest title" therein. (ECF No. 1 at ¶¶ 86-87.) He seeks a declaration, among other things, that he owns the property as a matter of law, has marketable title to the property, and an award of costs. (*Id.* at 7-8.) Before getting to the merits of his claim, the Court must consider whether Mr. Clark, who is not a signatory to the assignment of his mortgage from MERS to Bayview, has standing to challenge the validity of that assignment.

#### 1. Standing

"Standing – a litigant's right to be in the courtroom – must be established in every case." *Wilson*, 2014 WL 563457, at *4; *Culhane v. Aurora Loan Servs. of Neb.*, 708 F.3d 282, 289 (1st Cir. 2013). A plaintiff must show that he or she has a personal stake in the outcome of the litigation by "establish[ing] each part of a familiar triad: injury, causation, and redressability." *Culhane*, 708 F.3d at 289 (citing *Katz v. Pershing, LLC*, 672 F.3d 64, 71 (1st Cir. 2012)). Furthermore, a plaintiff must also generally show "that his claim is premised on his own legal rights (as opposed to those of a third party), that his claim is not merely a generalized grievance, and that it falls within the zone of interests protected by the law invoked." *Pagan v. Calderon*, 448 F.3d 16, 27 (1st Cir. 2006).

Mr. Clark argues that he has standing to challenge the mortgage assignment and foreclosure, citing the Court's decision in *Cosajay v. Mortg. Elec. Registration Sys., Inc.*, C.A. No. 10-442-M, 2013 WL 5912569 (D.R.I. Nov. 5, 2013), because he alleged that the assignment from MERS to Bayview was void, making a resulting foreclosure or the threat thereof, void as well. Defendants disagree, arguing that Mr. Clark has alleged at best only voidable conditions that would not afford him standing.

Standing in mortgage foreclosure cases has emerged in the face of very active litigation in our circuit. The United States Court of Appeals for the First Circuit, the Rhode Island Supreme and Superior Courts, and this Court have addressed the issue of standing in cases challenging mortgage foreclosures or potential foreclosures within the last year. Specifically, all courts agree that a mortgagor, alleging that the mortgage contract or assignment is void, ineffective or invalid has standing to proceed. A mortgagor does not have standing, however, if he or she raises challenges to an assignment that make it merely voidable at the election of one party but otherwise effective to pass legal title. *See Culhane*, 708 F.3d at 291); *Cosajay*, 2013 WL 5912569, at *3; *Mruk*, 82 A.3d at 536. The First Circuit cautioned in *Culhane* that this was not a broad grant of standing, but a narrow and circumscribed holding as to void, invalid, or ineffective assignments. *Culhane*, 708 F.3d at 291. Therefore, "[a] trial court confronted with the standing issue in this type of case must conduct an inquiry to determine whether a plaintiff's allegations are that a mortgage assignment was void, or merely voidable." *Wilson*, 2014 WL 563457, at *5.

The First Circuit first made this void versus voidable distinction in *Culhane* and the Rhode Island Supreme Court adopted it in *Mruk* as applicable to Rhode Island law. This Court applied it in *Cosajay* to its consideration of the types of allegations that would give an individual

standing in a mortgage foreclosure case. Hot off the presses, the First Circuit decided *Wilson v. HSBC Mortgage Services, Inc.*, giving this Court enhanced guidance on the void/voidable distinction in a standing analysis. *Wilson*, 2014 WL 563457, at *6. *Wilson* explicitly applied that legal concept to the facts of that plaintiff's case, but its explication of the law and analysis to facts that are present in so many mortgage foreclosure cases is particularly helpful here.

Specifically, the First Circuit in *Wilson* provided clear reasoning for this void/voidable distinction – a plaintiff has standing to challenge an "assignment as void because success on the merits would prove the purported assignee is not, in fact, the mortgagee and therefore lacks any right to foreclose on the mortgage." *Id.* at *5. A homeowner

> lacks standing to claim the assignment is voidable because the assignee still would have received legal title vis-a-vis the homeowner. Thus, even successfully proving that the assignment was voidable would not affect the rights as between those two parties or provide the homeowner with a defense to the foreclosure action.

*Id.*

Before the Court begins to analyze the facts of Mr. Clark's case in light of the recent case law, it will first examine how Rhode Island courts have historically defined what is void and what is voidable.

### a. What is void/voidable in Rhode Island?

Rhode Island has long recognized the distinction between a contract that is void and one that is voidable. A void contract is a nullity. In a mortgage context, an assignment is void where the assignor "never properly held the mortgage and, thus, had no interest to assign." *Culhane*, 708 F.3d at 291. An assignment can also be void where a plaintiff plausibly challenges the

assignment based on an argument that the assignor "never possessed a legally transferable interest" in the mortgage. *Woods v. Wells Fargo Bank, N.A.*, 733 F.3d 349, 354 (1st Cir. 2013).[4]

While a void contract is a nullity, a voidable contract can be nullified or ratified depending on whether a party to that contract takes action or fails to act. For example, a contract for sale of goods is properly called voidable if the "creditors may affirm the sale, or waive their right to treat it as void." *Colt v. Sears Commercial Co.*, 37 A. 311, 315 (R.I. 1897). A contract executed on behalf of a corporation without proper authority is not void, but only voidable, and can be ratified by the corporation after its signing. *Bishop v. Kent & Stanley Co.*, 41 A. 255, 257 (R.I. 1898). A contract with an infant is voidable, but not void, where "[t]he infant may avoid his contract, but an adult contracting with him cannot." *O'Rourke v. John Hancock Mut. Life Ins. Co.*, 50 A. 834, 835-36 (R.I. 1902) (citations omitted). A contract entered under "[d]uress does not render a contract void, merely voidable, but the victim may ratify the agreement by failing to object." *McGee v. Stone*, 522 A.2d 211, 214 (R.I. 1987).

Most noteworthy, the Rhode Island Supreme Court applied the void versus voidable distinction in the context of a mortgage and held that a mortgage is only voidable by the mortgagee even if the agent of the mortgagee acted without authority. *See Bishop*, 41 A. at 257; *see also Inventasch v. Superior Fire Ins. Co.*, 138 A. 39, 42 (R.I. 1927) ("the policy by the placing of the chattel mortgage was not void beyond the possibility of reinstatement without new consideration. The placing of the chattel mortgage rendered the policy voidable at the option of the insurer."). In essence, under Rhode Island law, if one party to an agreement can cure an alleged defect in the agreement that affects only them (in this case, the mortgagee) then the

---

[4] *Woods* involved a matter of Massachusetts law, but the parties have acknowledged that Rhode Island and Massachusetts law is substantially similar. Moreover, the Rhode Island Supreme Court in *Bucci* also acknowledged the similarity as did this Court in *Cosajay*.

9

contract can be voided by the party that can cure or waive the defect, but it is otherwise binding on the other party (in this case, the mortgagor).

The Rhode Island Supreme Court recently addressed the void/voidable distinction in its *Mruk* decision. In that decision, the court remained faithful to its previous standing decisions, finding that strangers to a contract do not have standing under that contract, but embraced the First Circuit's void versus voidable paradigm established in *Culhane*. The court confined its extension of standing to homeowners seeking to challenge "invalid, ineffective, or void" mortgage assignments in an effort to dispute a foreclosure. *Mruk*, 82 A.3d at 536 (quoting *Culhane*, 708 F.3d at 291). It specifically eliminated standing for challenges to shortcomings in assignments that would make those assignments merely voidable.[5] *Id.*

### b. What is void versus voidable in the First Circuit?

As previously noted, the First Circuit posited the void versus voidable distinction to find standing in mortgage assignments first in the *Culhane* case and later, in the *Woods* and *Wilson* cases. It held that a mortgagor only has standing "to challenge a mortgage assignment as invalid, ineffective, or void (if, say, the assignor had nothing to assign or had no authority to make an assignment in a particular assignee.)" *Culhane*, 708 F.3d at 291. "[C]laims that merely assert procedural infirmities in the assignment of a mortgage, such as a failure to abide by the terms of a governing trust agreement, are barred for lack of standing." *Woods*, 733 F.3d at 354. "[W]hen a corporate officer acts beyond the scope of his authority, '[h]is acts in excess of his authority, although voidable by the corporation, legally could be ratified and adopted by it.'" *Wilson*, 2014 WL 563457, at *6 (quoting *Commissioner of Banks v. Tremont Trust Co.*, 259 Mass. 162, 179–

---

[5] In *Mruk*, the court found that because the plaintiff contested the foreclosing entity's authority to foreclose by alleging an invalid assignment due to failure to transfer legal title, a false signature, and lack of authority to assign, he had standing. *Id.* at 537. Ultimately, despite finding that Mr. Mruk had standing, the Rhode Island Supreme Court dismissed his claims on the merits.

10

80 (1927)). In other words, in these circumstances it is the mortgagee's right to void the contract at their discretion, not the mortgagor's right.

The First Circuit in *Wilson* defined "void" contracts as those "'that are of no effect whatsoever; such as are a mere nullity, and incapable of confirmation or ratification.'" *Wilson*, 2014 WL 563457, at *6 (quoting *Allis v. Billings*, 47 Mass. 415, 417 (1843)). A "voidable" contract is one that is "'injurious to the rights of one party, which he may avoid at his election.'" *Wilson*, 2014 WL 563457, at *6 (quoting *Ball v. Gilbert*, 53 Mass. 397, 404 (1847)). The First Circuit recognized a "common thread running through *Culhane* and *Woods*," that is:

> the allegation that the foreclosing entity had no right to foreclose, as it had never become the mortgage holder in the first place. In other words, the homeowners sought to establish that the mortgage transfer from the assignor to the assignee — who in turn attempted to foreclose — was void at the outset. Through this allegation, the plaintiffs in those cases established standing because they challenged the foreclosing entity's status as mortgagee of their property.

*Wilson*, 2014 WL 563457, at *7. While the applications of this legal principle above were based on Massachusetts law in these three cases, there is nothing in the opinions that would make the rationale any different under Rhode Island law.[6] We now turn to Mr. Clark's Complaint.

### c. Has Mr. Clark alleged a void or voidable assignment?

In the lens of *Wilson* and Rhode Island law, the Court must apply the void versus voidable analysis to the facts of Mr. Clark's case. Mr. Clark starkly alleged in his Complaint that "[t]he assignment is void," (ECF No. 1 at ¶¶ 22, 27) but the Court need not credit such conclusory allegations and look for plausible allegations in the Complaint. *Iqbal*, 556 U.S. at 678.

---

[6] *See Cosajay*, 2013 WL 5912569, at *4 ("the Court finds that Rhode Island law provides that same protection to mortgagors in the same situations in which the First Circuit found the *Culhane* and *Woods* plaintiffs under Massachusetts law.")

11

The mortgage was assigned from MERS to Bayview, was signed by David Briggs, and dated April 12, 2012. (ECF No. 1 at ¶ 9.) Mr. Clark alleges that the Mr. Briggs had no authority to sign the assignment on behalf of Defendant MERS and that Mr. Briggs was neither a Vice-President nor an Assistant Secretary of MERS. (*Id.* at 9-10.) Mr. Clark further avers that no power of attorney from MERS to Mr. Briggs or Bayview was ever recorded. (*Id.* at 13.) He alleges that Mr. Briggs was a robo-signer and did not have the requisite intent to assign. (*Id.* at 14.)[7]

### i. *No Authority*

Assuming, as we must for purposes of deciding the motion to dismiss, that these averments above are true, Mr. Clark's complaint does not contain any allegations supporting his conclusion that the assignment is void, which would have given him standing to challenge it.[8] The assignment clearly identifies MERS as the assignor and Bayview as the assignee. The signature block shows that the assignment was made by MERS as assignor and that Mr. Briggs signed the assignment as an Assistant Secretary. Therefore, Mr. Clark's allegation that

---

[7] The Rhode Island Supreme Court found in *Chhun* that Mr. Chhun had standing under *Culhane* and stated a claim for relief based on four paragraphs in the complaint – alleging in sum that an agent, T. Schultz signed the assignment from MERS to Aurora without the authority to do so because he was not a MERS employee, MERS did not order the assignment, and there was no power of attorney between MERS and Aurora or Mr. Schultz. See *Chhun*, 84 A.3d at 423. Mr. Clark's allegations are similar to those Mr. Chhun made in his case. The Court finds, however, that the Rhode Island Supreme Court, in finding standing in *Chhun*, broadened the circumscribed scope of the standing parameters that the First Circuit established in *Culhane*. While this expansion may be an unintended consequence of that court's application of the state's broader standard of review on a motion to dismiss, this Court must follow the First Circuit's guidance in *Wilson*, a case that post-dates *Chhun*.

[8] Mr. Clark relies heavily on the Court's decision in *Cosajay* where it found standing based on the void versus voidable distinction. *Cosajay* does not apply, however. While the Court declined to parse Ms. Cosajay's complaint to determine which of her allegations were void versus voidable, its reliance on her plausible allegation that the mortgage assignment was invalid because it was made to an alleged non-existent entity to find standing is not present in Mr. Clark's case. *Cosajay*, 2013 WL 5912569, at *5.

Mr. Briggs was attempting to assign the mortgage for Bayview, not MERS is rejected based on the documents. Moreover, Mr. Clark has no standing to seek redress for an assignment allegedly made without authority because Mr. Briggs' act of signing the assignment, if outside of his authority, is merely voidable and would be actionable by MERS, not by Mr. Clark. *See Bishop*, 41 A. at 257; *see also Inventasch*, 138 A. at 42.

### ii. *Recorded Power of Attorney*

Additionally, Mr. Clark avers that no power of attorney from MERS to Mr. Briggs or Bayview was ever recorded. He cites no authority for the obligation to record powers of attorney and this Court could not find any such requirement in Rhode Island law. The Court therefore rejects this as an inappropriate legal basis for Mr. Clark's claims.

### iii. *Robo-signing*

Furthermore, Mr. Clark asserts that the Court should allow him to proceed with his claim that the assignment is void as fraudulent because a "robo-signer" signed the assignment. The First Circuit in *Wilson* dealt with the colloquial concept of robo-signing and found the plaintiff's allegations on that front to be "of no moment." *Wilson*, 2014 WL 563457, at *10. The Court agrees. The assertion, in essence is that the signature was invalid because a machine signed the documents and that the individual whose name appeared did not review the document. Assuming that the Court understands the meaning of the term,[9] this allegation would not make the assignment void, but rather merely voidable and only if the mortgagee wanted to assert the

---

[9] One definition of robo-signer: "An employee of a mortgage servicing company that signs foreclosure documents without reviewing them. Rather than actually reviewing the individual details of each case, robo-signers assume the paperwork to be correct and sign it automatically, like robots." Investopedia, (Feb. 26, 2014) http://www.investopedia.com/terms/r/robo-signer.asp.

13

invalidity of the signature.[10] By the mortgagee's silence, it has ratified the affirmation and the assignment, or at a minimum waived any right to assert lack of authority. *See e.g., Colt*, 37 A. at 315 (a contract is voidable if the "creditors may affirm the [contract], or waive their right to treat it as void").[11] Accordingly, this Court finds that Mr. Clark lacks standing to challenge the mortgage assignment from MERS to Bayview and therefore this claim is dismissed.

iv. *Mortgage and Note Held by the Same Entity*

Finally, Mr. Clark asserts that the assignment is void because MERS did not hold both the note and the mortgage when it executed the assignment to Bayview. (ECF No. 33 at 13.) This argument appears to be a rehash of others that have been made against the MERS system that have been uniformly rejected by the Rhode Island Supreme Court and the First Circuit. *See Bucci v. Lehman Bros. Bank*, 68 A.3d 1069, 1087 (R.I. 2013) ("none of the statutes that plaintiffs rely upon prohibit MERS from foreclosing on the Bucci mortgage, because in so doing, MERS would be acting as an agent on behalf of the note owner. Furthermore, under our reading of these statutes, any of the obligations placed upon a 'mortgagee' may be fulfilled by either the mortgage holder or the owner of the note, provided that an agency relationship exists between the two."); *Mruk*, 82 A.3d at 537 (the Rhode Island Supreme Court "held that the note and the mortgage did not need to be held by one entity.") *Culhane*, 708 F.3d at 292 ("We add that — short of the time of foreclosure — the MERS framework, which customarily separates the legal

---

[10] This ruling may not necessarily apply to foreclosure documents where there may be a statutory requirement for an agent of the mortgagee to actually have reviewed the document and attested to something in the document before it is signed and issued.

[11] Moreover, the First Circuit recently ruled that: "We decline to speculate on the meaning the [Plaintiffs] ascribe to the term [robo-signing]. Accordingly, the bare allegation of 'robo-signing does nothing to undermine the validity of the 2009 Assignment." *Wilson*, 2014 WL 563457, at *10.

interest from the beneficial interest, corresponds with longstanding common-law principles regarding mortgages.") (applying Massachusetts law).

In this case, there are no facts alleged that would violate the rule set forth in *Bucci*, *Mruk*, or *Culhane*. The mortgage identified MERS as the mortgagee acting solely as the nominee for the Lender, Equity One, and Equity One's successors and assigns. (ECF No. 28-3 at 2.) The mortgage expressly provides:

> "This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, *Borrower does hereby mortgage, grant and convey to MERS*, (solely as nominee for [Equity One] and [Equity One's] successor and assigns) *and to the successors and assigns of MERS*, with Mortgage Covenants upon the Statutory Condition and with the Statutory Power of Sale, the [Property]."

(*Id.* at 4.) (emphasis added). The mortgage further provides:

> "Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for [Equity One] and [Equity One's] successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of [Equity One]."

(*Id.*)

The mortgage is clear that MERS is the mortgagee acting solely as the nominee for the Lender, Equity One, and Equity One's successors and assigns. *See Bucci*, 68 A.3d at 1085. MERS *assigned* the mortgage to Bayview. The note was endorsed by Equity One and is held by the custodian for Bayview. Bayview now holds the mortgage and the note. Mr. Clark's argument that the assignment is void because MERS was not the mortgagee and holder of the promissory note is rejected and does not provide a basis for finding standing in his case.

## 2. Notice Requirements in the Mortgage

Mr. Clark alleges that he never received notice of default and intent to accelerate unless he cured the default provided in his mortgage. The Court need not undertake a complicated standing analysis on this issue, as Mr. Clark clearly is not an uninterested third party to the mortgage he signed or to a threatened foreclosure on his own property. As a party to the mortgage, he would have standing to challenge any breach of that document by the lender or its assigns.

Mr. Clark argues that Defendants did not comply with his mortgage's notice prior to acceleration requirement such that he states a claim and their motion to dismiss should be denied. (ECF No. 1 at ¶ 31.) This argument involves the relatively standard provision found in paragraph twenty-two of Mr. Clark's mortgage document; however, the Court finds that paragraph thirty-one of the Complaint only reproduces the notice obligation found in the mortgage document without tying that language to Defendants' act or omission. The Complaint does not make any allegations about a failure to send the acceleration notice, but focuses on failures regarding the statutory power of sale, specifically that MERS and Bayview had no authority to act because neither were the Lender. (ECF No. 1 ¶¶ 32-41.) Subsequent Complaint paragraphs allege that *the Lender* failed to notify him, but Mr. Clark makes absolutely no allegation – plausible or otherwise – that *Defendants* did not comply with the terms of mortgage paragraph twenty-two such that they cannot know of or defend against that allegation. Standing requirement aside, Mr. Clark's allegations with respect to notice fail under an *Iqbal-Twombley* analysis. *Iqbal*, 556 U.S. at 678 ("threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Twombley*, 550 U.S. at 555 ("[f]actual allegations must be enough to raise a right to relief above the speculative level.")

Moreover, Mr. Clark allegations, even if plausible, run only to the lender, Equity One. He alleges that the lender never invoked the statutory power of sale; that it never mailed a notice of sale to him or published the notice of sale. (ECF No. 1 at ¶¶ 33-35.) Mr. Clark makes no such allegations as to MERS and/or Bayview. Though he does not articulate it in his brief, Mr. Clark may be arguing that notice under the mortgage paragraph twenty-two must come from the lender (Equity One) not from Bayview, even though Bayview is the assignee of MERS as nominee for the lender (Equity One), and because Equity One did not give proper notice, any foreclosure is illegal. The Rhode Island Supreme Court in both *Bucci* and *Mruk* squarely rejected this argument because the mortgage granted the power of sale to MERS and to Bayview as MERS's *successor and assign*. *Bucci*, 68 A.3d at 1087; *Mruk*, 82 A.3d at 537. Therefore, Mr. Clark's argument on this ground is overruled.

### 3. Mortgage has been satisfied

Mr. Clark alleges that Defendants' motion to dismiss should be denied because the note on his property before the Court is current or has been satisfied by another third party. (ECF No. 1 at ¶ 51.) Mr. Clark has failed to plead a single factual allegation that would allow this Court to determine if his assertion on this point is at all plausible. It is a bald assertion if ever there was one and this Court cannot credit it without more information regarding any alleged payments. *SEC v. Tambone*, 597 F.3d 436, 442 (1st Cir. 2010) (citing *Twombly*, 550 U.S. at 555). ("If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal."); *Aponte–Torres v. Univ. of Puerto Rico*, 445 F.3d 50, 54 (1st Cir. 2006). But, there is no information forthcoming demonstrating that Mr. Clark was not in default or explaining why he agreed to participate in the Special Master program, paying use and occupancy fees, while

alleging that his mortgage was paid in full, and objecting to being removed from that mediation program, explicitly acknowledging that he wanted to make his mortgage perform again. Because Mr. Clark has failed to meet the "low, but ... real" threshold of plausibility on a motion to dismiss, *see Gooley*, 851 F.2d at 514, his claim that his mortgage has been paid is dismissed.

### 4. Fraud

Mr. Clark has alleged very general fraud allegations in his Complaint, such as "[t]he mortgage is void due to fraud;" "[t]he note is void due to fraud;" and allegations about "deceptive practices regarding the false filing of documents." (*See* ECF No. 1 at ¶¶ 69, 72, 96.) Rule 9(b) of the Federal Rules of Civil Procedure states: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other conditions of mind of a person may be averred generally."

> [E]vidence and detailed facts are not required where allegations of fraud set forth the specific basis for the claim. Even where allegations are based on information and belief, supporting facts on which the belief is founded must be set forth in the complaint. And this holds true 'even when the fraud relates to matters peculiarly within the knowledge of the opposing party.'

*Hayduk v. Lanna*, 775 F.2d 441, 444 (1st Cir. 1985) (quoting *Wayne Inv., Inc. v. Gulf Oil Corp.*, 739 F.2d 11, 13-14 (1st Cir. 1984)). This Court finds that these general fraud allegations are unsupported and thus not in compliance with Rule 9(b)'s "particularity" requirement. Therefore, Mr. Clark's Complaint, to the extent that he alleges fraud, is rejected.

### B. Count II – Quieting Title Claim

Mr. Clark alleges that Defendants do not have a clear chain of title showing their ownership in the note and mortgage on his property at 252-254 Old Forge Road, Warwick, Rhode Island. However, the Assignment states that Mr. Clark's mortgage was assigned to Defendant Bayview from MERS. (ECF No. 38-2.) As noted *supra*, the Rhode Island Supreme

Court held in *Bucci* that MERS and its assigns can institute foreclosure even where the foreclosing entity does not hold an interest in the note. *Bucci*, 68 A.3d at 1084-85. Accordingly, the mortgage assignment to Bayview is sufficient to show that it has the right to foreclose on Mr. Clark's property. Mr. Clark's quiet title claim therefore must be dismissed.

### C. Punitive Damages

In light of the Court's conclusions as to Counts I and II of Mr. Clark's Complaint, no discussion of his punitive damages claim is merited. Count III is likewise dismissed.

## IV. CONCLUSION

Mr. Clark does not have standing to challenge the mortgage assignment because the allegations in his Complaint at best simply allege voidable defects. Mr. Clark's remaining claims fail because they are made contrary to Rhode Island and First Circuit precedent. Defendants' Motion to Dismiss (ECF No. 28) is GRANTED. Mr. Clark's Complaint against all Defendants is DISMISSED.

IT IS SO ORDERED:

_____
John J. McConnell, Jr.
United States District Judge

March 27, 2014

19